IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

COMPASSWARE, INC.,
         Plaintiff,
-vs-

BEHEALTH SOLUTIONS, L.L.C.,
         Defendant.

CAUSE NO.:
AU-17-CA-01057-SS

**ORDER**

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically, Defendant BeHealth Solutions, L.L.C. (Behealth)'s Motion to Dismiss for Lack of Personal Jurisdiction [#5], Plaintiff Compassware, Inc. (Compassware)'s Response [#9] in opposition, and BeHealth's Reply [#10] in support as well as Compassware's Motion to File Surreply [#13] and BeHealth's Response [#17] in opposition. Having reviewed the documents, the relevant law, and the file as a whole, the Court now enters the following opinion and orders.

**Background**

This is a contract dispute between BeHealth and Compassware. BeHealth is a limited liability company organized under the laws of Virginia, with members in Virginia, Indiana, Maryland, and California. Not. Removal [#1]. Compassware is a citizen of Texas and Delaware. *Id.* The parties' current dispute centers on whether this Court may exercise personal jurisdiction over BeHealth.

In July 2016 BeHealth hired Chris Dancy, a mobile app developer, to work as an independent contractor on the development of an app for BeHealth. Mot. Dismiss [#5-2] Ex. A-1. Dancy lived and worked in Tennessee. *Id.* [#5] at 2.

Subsequently, Dancy suggested BeHealth should hire Compassware, a company owned by Dancy, to provide development services for BeHealth's app. Mot. Dismiss [#5] at 2. BeHealth proved amenable to this suggestion. *Id.* However, it appears Dancy did not have employees in place to perform the work for BeHealth, for in June 2016, Dancy contacted Chris Dauw, an app developer, and solicited the services of Dauw's development team for work on the BeHealth app. Dauw and his development team are located in Austin, Texas. Resp. Mot. Dismiss [#9-1] Ex. A (Dauw Aff.) at 1. Shortly thereafter, in August 2016, Dauw was made CTO of Compassware. *Id.*

In September 2016, BeHealth investors, executives, and board members attended a project kick-off meeting with Compassware in Austin, Texas. *Id.* at 2. Dauw's Texas-based development team began working on BeHealth's app around the same time, although BeHealth and Compassware did not enter into contractual agreements until January 2017. *Id.* at 2–3.

The contractual agreements entered into by BeHealth and Compassware were signed by BeHealth in Virginia and by Dancy, in his capacity as CEO of Compassware, in Tennessee. Mot. Dismiss [#5] at 2–3. The agreements also list a Tennessee mailing address for Compassware. *id.* [#5-3] Ex. A-2 at 2. However, Dauw, the CTO[1] in charge of the development of the app, states the terms of the contract were negotiated by Dauw from Texas and in large part drafted in Texas. Dauw Aff. Dauw further states BeHealth was aware the app would be developed exclusively in Texas, by Dauw's Texas-based development team. *Id.*

BeHealth representatives subsequently attended meetings with Compassware in Texas on three separate occasions: January 16, 2017; February 1, 2017; and June 15, 2017. Dauw Aff. There is no indication BeHealth representatives ever met with Compassware anywhere other than Texas. *See* Mot. Dismiss [#5]; Resp. Mot. Dismiss [#9]; Reply Mot. Dismiss [#10].

---

[1] Dauw was subsequently named CEO in June 2017. Dauw Aff. at 3.

In October 2017, Compassware filed suit against BeHealth in state court for breach of contract. Supp. Filing [#6-1] Pet. at 1–2. BeHealth removed the suit to federal court in November 2017 and now asks the Court to dismiss for lack of subject matter jurisdiction. Not. Removal [#1]; Mot. Dismiss [#5].

**Analysis**

**I.  Legal Standard**

The Federal Rules of Civil Procedure allow a defendant to assert lack of personal jurisdiction as a defense to suit. FED. R. CIV. P. 12(b)(2).

To determine whether a federal district court sitting in diversity has personal jurisdiction over a nonresident defendant, the district court considers first whether exercising jurisdiction over the defendant comports with due process. *Religious Tech. Ctr. v Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003). If the requirements of due process are satisfied, the court then determines whether the exercise of jurisdiction is authorized by the jurisdictional "long-arm" statute of the state in which the court sits. *Id.* Because the Texas long-arm statute has been interpreted as extending to the limit of due process, the two inquiries are the same for district courts in Texas. *Id.*; *see* TEX. CIV. PRAC. & REM. CODE § 17.001–17.093.

"The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). One requirement of due process is that the nonresident defendant be properly subject to the personal jurisdiction of the court in which the defendant is sued. *Id.*

The United States Supreme Court has articulated a two-pronged test to determine whether a federal court may properly exercise jurisdiction over a nonresident defendant: (1) the

nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004).

A defendant's "minimum contacts" may give rise to specific personal jurisdiction if (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendant's contacts with the forum state." *Id.* As the Fifth Circuit has repeatedly stated, "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986). Therefore, when analyzing whether a contractual relationship gives rises to sufficient contacts, courts consider the "prior negotiations and contemplated future consequences" of the contract, "along with the terms of the contract and the parties' actual course of dealing." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985).

The plaintiff has the burden of making a prima facie case by showing a defendant has sufficient "minimum contacts" with the forum state to justify the state's exercise of either specific or general jurisdiction. *Freudensprung*, 379 F.3d at 343. If the plaintiff does so, the burden shifts to the defendant to show such an exercise offends due process because it is not consistent with traditional notions of fair play and substantial justice. *Id.* Finally, when a court rules on a 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept the non-moving party's jurisdictional allegations as true and resolve all factual disputes in its favor. *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999).

## II. Application

### A. Minimum Contacts

To survive BeHealth's motion to dismiss, Compassware must present a prima facie case for the exercise of personal jurisdiction over BeHealth. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). Because BeHealth brought the motion to dismiss, all "conflicts between the facts contained in the parties' affidavits must be resolved" in Compassware's favor. *Id.*; *see also Guidry*, 188 F.3d at 625. With these principles in mind, Compassware has met its burden of presenting a prima facie case in support of the exercise of specific jurisdiction.

Compassware has alleged sufficient facts to show the instant controversy arises out of BeHealth's purposeful minimum contacts with the forum state. Prior to entering into a contract with Compassware, BeHealth representatives traveled to Austin, Texas to meet with the software development team. Dauw Aff. at 2. Dauw, the current CEO of Compassware, states BeHealth was aware prior to signing the contract that the app would be developed exclusively in Texas by Compassware's Texas-based development team. *Id.* at 1–3. Subsequently, BeHealth representatives traveled to Texas three more times over the next twelve months in order to meet with Compassware's development team. *Id.*

These contacts with the forum state were not random or fortuitous. Although Dancy corresponded with BeHealth from Tennessee and initially listed Brentwood, Tennessee as a place of business for mailing purposes, BeHealth met with Compassware in Texas prior to signing the contracts and was informed Compassware's Texas-based development team would be handling development of the app. Dauw Aff. at 1–3; Mot. Dismiss [#5] at 1–2; *id.* Ex. A-2 at 2. BeHealth's meetings in Texas indicate BeHealth knew Compassware's primary operations

5

were based in Texas and knew performance under the contract would occur in Texas.[2] Moreover, it does not appear BeHealth ever met with Compassware anywhere other than Texas. Notwithstanding the Tennessee mailing address supplied by former-CEO Dancy,[3] the parties' "actual course of dealing" indicates that BeHealth purposefully established minimum contacts with Texas and that the instant controversy arises out of those contacts. *See Burger King*, 471 U.S. at 479 (instructing courts to consider "contemplated future consequences" of the contract as well as "the parties' actual course of dealing").

### B. Traditional Notions of Fair Play and Substantial Justice

As Compassware has made out a prima facie case for the exercise of specific personal jurisdiction, the Court must next determine whether forcing BeHealth to litigate in Texas would be so burdensome as to amount to a denial of due process. *See id.* at 874 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 224 (1957)). The factors which may be considered in the "fairness analysis" include the burden upon the nonresident defendant, the interests of the forum state, the plaintiff's interest in securing relief, the interstate judicial system's interest in efficiently resolving controversies, and the shared interest of the several States in furthering fundamental substantive social policies. *Id.* (citing *Wilson*, 20 F.3d at 647 n.3).

As is often the case in diversity suits, the nonresident defendant undoubtedly faces some burden if subjected to the jurisdiction of the forum state. BeHealth appears to be based in Virginia. Not. Removal [#1]. Compassware, meanwhile, is a citizen of Delaware and Texas. *Id.* Both parties have some interest in local courts providing relief. Whether Texas is the most

---

[2] In fact, BeHealth's reply indicates Compassware's *only* development project was the BeHealth app, suggesting BeHealth knew Compassware's operations were located exclusively in Texas. Reply Mot. Dismiss [#10] at 2.

[3] *Cf. Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 10126, 1029 (5th Cir. 1983) ("Nor do we weigh heavily the fact that [defendant] may have mailed payment checks into the forum state in exchange for the goods.").

efficient forum is not the question. At this point, exercising jurisdiction over BeHealth does not appear to be so burdensome as to offend "traditional notions of fair play and substantial justice." *See Int'l Shoe*, 326 U.S. at 316; *see also Electrosource*, 176 F.3d at 874 (exercise of jurisdiction over defendant proper because inconvenience did not amount to denial of due process). The Court therefore declines to dismiss this case under Rule 12(b)(2).

**Conclusion**

The Court finds it may exercise personal jurisdiction over BeHealth. Correspondingly, BeHealth's motion to dismiss for lack of personal jurisdiction is denied. Finally, because the Court has denied BeHealth's motion to dismiss, Compassware's motion for leave to file a surreply is dismissed as moot.

Accordingly,

IT IS ORDERED BeHealth's Motion to Dismiss [#5] is DENIED; and

IT IS FURTHER ORDERED Compassware's Motion for Leave to File a Surreply [#13] is DISMISSED AS MOOT.

SIGNED this the 22 day of February 2018.

_____
SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE